# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

Case No. _____

| | |
|---|---|
| DARCY TYRRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RELX INC. EMPLOYEE BENEFITS | ) |
| COMMITTEE; and the SUPPLEMENTAL | ) |
| RELX INC. US SEVERANCE PLAN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

## PRELIMINARY STATEMENT[1]

Darcy Tyrrell ("Plaintiff") brings this ERISA action against the RELX Inc. Employee Benefits Committee ("Committee") and the Supplemental RELX Inc. US Severance Plan (the "Plan") to secure severance and other benefits to which Plaintiff is entitled under the Plan, which is administered by the Committee. Plaintiff is covered under the Plan by virtue of her employment with Elsevier, Inc., an affiliate of RELX, Inc., the sponsor of the Plan.

## PARTIES

1. At all times relevant to this action, Plaintiff was a citizen and resident of North Carolina.

---

[1] This Preliminary Statement gives a synopsis of Plaintiff's claims and is not intended as an allegation to be answered by Defendants.

2. The Committee is named as the plan administrator of the Plan in the Plan document and therefore is the Plan Administrator of the Plan within the meaning of ERISA §3(16), 29 U.S.C. §1002(16).

3. The Plan is an employee welfare benefit plan organized and subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, *et. seq.* and the regulations promulgated thereunder. At all times pertinent to this action, RELX sponsored and maintained the Plan.

## JURISDICTION AND VENUE

4. This court has jurisdiction to hear this claim pursuant to 28 U.S.C. §1331, in that Plaintiff's claims arise under the laws of the United States. Specifically, Plaintiff brings this action under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) to secure benefits due.

5. Venue in the Western District of North Carolina is appropriate by virtue of Defendants doing business and being found in this District.

## FACTUAL ALLEGATIONS

6. At all times relevant to this Complaint, Plaintiff has been a participant in the Plan by virtue of her employment with Elsevier.

7. The Plan offers severance and other benefits to covered participants/eligible employees whose employment is involuntarily terminated for any reason other than for cause.

8. Under the terms of the Plan, the Committee administers the Plan and has authority to grant or deny benefits.

9. The Committee has a fiduciary obligation to Plaintiff to administer the Plan fairly and to determine benefits according to the terms of the Plan.

10. Plaintiff began working for Elsevier on or about 2009, as a Brand Marketing Manager.

11. In 2011, Plaintiff was promoted to Senior Brand Marketing Manager, and in or about 2012, Plaintiff was again promoted to Brand Marketing Director.

12. In 2013, as part of a marketing reorganization, Plaintiff's title was changed to Product Marketing Director.

13. As part of another marketing reorganization in June 2017, Plaintiff's role and title were changed to Director, Integrated Marketing and Operations.

14. In January 2018, as part of a major reorganization of the marketing department, Plaintiff's role and title were again changed to Director, Product Marketing.

15. As part of the January 2018 reorganization, several marketing positions were eliminated, and the terminated employees received severance packages.

16. From 2009 to the end of 2018, Plaintiff received yearly performance ratings that ranged from "meets all expectations," and "exceeded some expectations," to "exceeded all expectations."

17. In March 2019, Plaintiff's then manager, Jeff Pfiefer, completed Plaintiff's 2018 performance review and rated her as "met all expectations." Plaintiff also received merit and performance bonuses for her work in 2018.

18. In April 2019, Elsevier initiated a fourth reorganization of its marketing department within about two years.

19. In April 2019, Plaintiff had a meeting with the Senior Director of Human Resources and Sean Fitzpatrick, the General Manager of the North American Research Division, and was simultaneously (1) notified of the reorganization, (2) informed she would report to a

-3-
Case 3:21-cv-00165-RJC-DCK    Document 1    Filed 04/14/21    Page 3 of 9

new manager, Maura Donovan, in a different division, and (3) put on a performance improvement plan, or "PIP" by Mr. Fitzpatrick.

20. Elsevier's PIP policy states that a PIP is to be used when an employee's performance or behavior "is consistently below expectation."

21. Prior to receiving the PIP, Plaintiff had not received any indication from Mr. Pfiefer or others that her performance as Director, Product Marketing was deficient. To the contrary, she had received favorable performance ratings and bonuses for her work in 2018.

22. Elsevier's PIP policy prohibits employees in a new role from receiving a PIP within the first 12 months so the employee has time to acclimate to the new position before being subject to discipline. The PIP states it was delivered to Plaintiff in a new position as "VP, Product Marketing."

23. Elsevier violated its PIP policy when it simultaneously put Plaintiff in a new role with the duties and responsibilities of a Vice President and put her on a PIP within 12 months of being placed in that new role.

24. After receiving the PIP, and as part of the marketing reorganization, Plaintiff was told to report to a new manager, Maura Donovan, who oversaw Lexis's large law firm marketing division.

25. Plaintiff expressed concern about the PIP with Human Resources because the conditions of her PIP were subjective and vague and because the PIP was delivered in connection with a reorganization. Plaintiff also articulated concerns because the PIP was not prepared by her former manager, Mr. Pfiefer, and her progress under the PIP would be measured by her new supervisor, Ms. Donovan.

26. In June 2019, barely two months after receiving the PIP and after ten years of service, Elsevier terminated Plaintiff.

27. The marketing department reorganization that began in April 2019 continued after Plaintiff's termination.

28. In July 2019, after Plaintiff's termination, Elsevier posted a job advertisement for a Vice President of Product Marketing position to replace the work Plaintiff had been doing immediately prior to her termination.

29. Plaintiff subsequently received unemployment benefits from the North Carolina Department of Commerce Division of Employment Security after a determination that one or more of the following situations applied to her termination for what Elsevier had claimed was unsatisfactory work performance: Plaintiff (1) was insufficiently warned of alleged unsatisfactory work performance, (2) was unaware of the employer's expectations(s), or (3) the unsatisfactory work performance was not within Plaintiff's reasonable ability to have prevented or controlled.

30. Prior to her termination, Plaintiff was an Eligible Employee, as that term is used in the Plan. Under the terms of the Plan, Plaintiff would be entitled to severance benefits should she be involuntarily terminated from employment for a reason other than for cause.

31. On June 21, 2019, Elsevier involuntarily terminated Plaintiff's employment other than for "cause," as that term is defined in the Plan, and Plaintiff is therefore entitled to severance benefits.

32. The Plan also states that an employee who is terminated for poor performance may be provided severance benefits under the Plan by the Committee.

33. The Plan provides that "[t]ermination for poor job performance does not include termination for performance deficiencies that arise as a result of a skills mismatch. A termination resulting from a skills mismatch occurs when: … (2) the requirements of the eligible Employee's position change and the Eligible Employee's Employer, in its sole discretion, determines at any time within twelve months of such change that the Eligible Employee is no longer able to perform the position successfully and therefore terminates the Eligible Employee's employment." Plan, § 2(a)(vii)(B).

34. Plaintiff's termination, issued in conjunction with a recent job change, was a result of a skills mismatch.

35. Although Plaintiff was involuntarily terminated from employment for a reason other than for cause, Elsevier has denied Plaintiff severance benefits to which she is entitled under the Plan.

36. Plaintiff was at all times a Plan participant or beneficiary, as that term is defined in ERISA.

37. Plaintiff applied to the Committee for severance and other benefits and submitted information showing that she was entitled to benefits on account of her involuntary termination.

38. The Committee denied Plaintiff's claim for benefits on or about December 20, 2019.

39. Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the Committee's denial of benefits. She submitted additional information to show that she is entitled to severance benefits.

40. The Committee denied Plaintiff's appeal of her claim for severance benefits. To the extent required under law, Plaintiff exhausted her administrative remedies and her claim is ripe for judicial review pursuant to ERISA §502, 29 U.S.C. §1132.

41. Defendants Committee and the Plan have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

   a. Elsevier involuntarily terminated Plaintiff's employment other than for "Cause" (as that term is defined in the Plan) and as a result of a skills mismatch;

   b. Defendants Committee failed to accord proper weight to the evidence in the administrative record showing that Plaintiff was involuntarily terminated from employment other than for "Cause" (as that term is defined in the Plan) and as a result of a skills mismatch; and

   c. Defendant Plan has violated its contractual obligation to furnish severance benefits to Plaintiff.

FIRST CLAIM FOR RELIEF:
WRONGFUL DENIAL OF BENEFITS UNDER
ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)

42. Plaintiff reincorporates and realleges the allegations contained at paragraphs 1-41 above.

43. Defendants Committee and the Plan have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

   a. Plaintiff has been wrongfully denied severance benefits;

   b. Defendant Committee failed to accord proper weight to the evidence in the administrative record; and

c. Defendant Plan has violated its contractual obligation to furnish severance benefits to Plaintiff.

## SECOND CLAIM FOR RELIEF:
## ATTORNEY'S FEES UNDER ERISA §502, 29 U.S.C. §1132

44. Plaintiff reincorporates and realleges the allegations contained at paragraphs 1-43 above.

45. Plaintiff is entitled to her attorney's fees and costs pursuant to ERISA §502(g), 29 U.S.C. §1132(g).

WHEREFORE, Plaintiff prays that the Court grant her the following relief:

1. Grant Plaintiff declaratory and injunctive relief, finding that she is entitled to severance and other benefits under the terms of the Plan, and that Defendants be ordered to pay severance benefits according to the terms of the Plan;

2. Grant Plaintiff injunctive and declaratory relief providing that she is entitled to any other associated or related benefits sponsored or maintained by Defendants for which Plaintiff qualifies as a result of her involuntary termination;

3. Enter an order awarding Plaintiff pre-judgment interest and, to the extent applicable, post-judgment interest;

4. Award Plaintiff all reasonable attorney's fees and expenses incurred herein pursuant to ERISA §502(g);

5. Award Plaintiff the costs of this action; and

6. Award Plaintiff such other and further relief as may be just and proper.

Dated this the 14th day of April 2021.

                                        Respectfully Submitted,

*/s/ Bryan L. Tyson*
*/s/ Hannah Auckland*
Bryan L. Tyson (N.C. Bar No. 32182)
Hannah Auckland (N,C. Bar No. 35953)
Marcellino & Tyson, PLLC
2820 Selwyn Ave., Suite 350
Charlotte, North Carolina 28209
Telephone: 704.919.1519
Fax: 980.219.7025
bryan@yourncattorney.com
hauckland@yourncattorney.com

**Attorneys for Plaintiff Darcy Tyrrell**